UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

MEYER CORPORATION U.S.,

                          Plaintiff,

          - against -                    ORDER

ALFAY DESIGNS, INC., et ano,             CV 2010 3647 (CBA)(MDG)

                          Defendants.

- - - - - - - - - - - - - - - - - - -X

          This order summarizes and elaborates on rulings made at a

conference held on July 25, 2012 with respect to two motions filed by

defendants Alfay Designs, Inc. and Al Smaldone (collectively

"defendants" or "Alfay") to compel and for sanctions.  In the first

motion, defendants raise various challenges to plaintiff's discovery

responses and to the conduct of plaintiff's counsel at depositions

taken by defendants.  Ct. doc. 76.  Defendants also filed a separate

motion with respect to the deposition of Ms. Christina Ushijima, an

attorney for Meyer, who was designated by Meyer to testify on various

technical computer issues.  Ct. doc. 77).

1.   **Defendants' First Motion to Compel**

     A.    Document Request 8

     Defendants move to compel a further response to document

request 8 of their Third Set of Document Requests, which seeks

production of cost sheets or other documents showing "landed costs"[1]

---

     [1]  Plaintiff explained that "landed costs" refer to the costs of
manufacturing and shipping a product from overseas to be sold in
the United States.

of all Farberware enamel steel tea kettles.  Defendants seek, in particular, the cover e-mails transmitting monthly reports on the landed costs of Farberware products.  Defs.' Mot. to Compel (ct. doc. 76) at 2-5.  Pointing to deposition testimony of Vincent Siano, Senior Sales Director for Meyer, that monthly reports of landed costs were transmitted with a cover email, defendants contend plaintiff should have also produced such emails when responding to the document request.  Plaintiff argues that the emails contain confidential information relating to many other products not relevant to this litigation which would be too burdensome to redact and that the email correspondence was not part of the original request. Plaintiff also states that it has already produced all documents concerning the landed costs of stainless steel kettles.

As I noted at the conference, the scope of discovery concerning plaintiff's damages has given rise to a number of disputes in this case.  Plaintiff's counsel confirmed on the record at the conference that plaintiff was not seeking its lost profits and that the relief of "disgorgement of profits" sought in paragraph 26A of its Third Amended Complaint, refers to recovery of defendants' profits on the tea kettles at issue, not plaintiff's lost profits.  Defendants argue that the email correspondence is important to understanding how Meyer determines wholesale pricing, but the price of plaintiff's products have no bearing on defendants' profits.  Thus, defendants' request for the cover e-mails and other information regarding the landed costs reports is denied.

Notwithstanding this ruling, this Court agrees with defendants that the emails are responsive to their initial document request and should have been produced with the reports that plaintiff did produce. Inexplicably, Meyer's counsel represented at a hearing on October 12, 2011 that because "we don't keep documents that contain the information that defendant had requested," Meyer had generated reports from databases stored on computers to respond to defendants' discovery requests. Ct. doc. 76-8, Ex. H at 3. Clearly, the testimony of Mr. Siano establishes that there are documents that are kept. This Court had previously expressed skepticism with the extent of plaintiff's production; this dispute does little to allay the doubt even if it concerns discovery that is not relevant.

2.  Defendants' Document Request 11

Defendants challenge the adequacy and nature of plaintiff's production in response to document request 11 of Defendants' First Demands. Defendants seek in this request "[a]ll documents which you contend constitute Meyer's notice to Alfay concerning Meyer's 'exclusive right to sell kettles made of stainless steel.'" Defendants contend that plaintiff's production has not been responsive and that its most recent production consisted of approximately 400 photos which fail to demonstrate that plaintiff gave notice to defendants. Plaintiff claims to the contrary that the documents it has provided, including the photographs, are responsive.

Defendants argue that because the photographs produced do not constitute notice to Alfay, plaintiff should be required to amend its

supplemental response to state that there are no documents evidencing notice that plaintiff had given the defendants.  This Court declines to address the evidentiary value of documents produced, since that is more appropriately addressed later in this case.  However, if plaintiff has, in fact, produced all responsive documents, plaintiff is not entitled to present other documents in the future to support its allegation that it provided notice to defendants.  Plaintiff is directed to respond and produce by August 17, 2012[2] any further documents in its control that respond to Document Request 11. Plaintiff will be precluded from using any documents other than those produced to establish the notice that it claimed it gave defendants. As discussed on the record, oral conversations and documents not in plaintiff's control will not be precluded by this ruling.  However, plaintiff is reminded that "control" should be construed broadly and may extend to persons not within its corporate structure, including EVCO, which is represented by plaintiff's counsel in the dispute discussed below.

     3.   <u>EVCO Documents</u>

     Defendants move to compel EVCO to provide an affidavit confirming that EVCO had produced all the documents in response to three subpoenas served on it.  EVCO produced only 320 documents, including only three emails, which this Court agrees is a

---

[2] At the 7/25/2012 conference, the Court originally ordered production by 8/8/2012.  However, in light of the filing date of this Order, the Court extends this deadline and all other deadlines set at the conference.

surprisingly small number.  When EVCO claimed that it had produced all the responsive documents, defendants requested EVCO to explain in writing the search it undertook.  Plaintiff's counsel, who is representing EVCO with respect to the issues raised in this motion, refused to do so.

Following the filing of defendants' motion to compel, plaintiff provided an affidavit from an EVCO executive explaining the circumstances of the searches it undertook in response to defendants' subpoenas.  Pl's Opp'n to Mot. to Compel (ct. doc. 80) at 6, Ex. C. Acknowledging that their request for such an affidavit is therefore moot, defendants still seek sanctions.  Because I find that an affidavit of this sort is not required by F.R.C.P. 45, plaintiff's initial refusal to produce the affidavit does not constitute failure to provide discovery as the term is used in Rule 37(a)(5).[3] Defendants' request for sanctions as is denied.

However, plaintiff's belated production of the affidavit again reflects, at best, plaintiff's failure to attempt to resolve the dispute in good faith, as evidence by the many motions previously filed by defendants which this Court has granted in large part. Plaintiff is warned that any future failure to cooperate and engage in a good faith attempt to resolve a discovery dispute will not be so readily excused.

---

[3] Rule 37(a)(5) requires that a court impose sanctions where a motion to compel is granted or discovery is provided after the filing of such a motion, unless one of three conditions is met.

4.  Deposition Conduct

Defendants contend that they are entitled to the costs of the depositions of four Meyer employees because plaintiff's counsel improperly raised a number of objections which interfered with questioning of Meyer's employees.  These objections fall into three categories:  speaking objections (for vagueness, ambiguity, calling for speculation, relevancy), oft-repeated objections to questions not within the scope of the topics listed in the Rule 30(b)(6) deposition notice and objections to questions about privileged matters.  Defendants also seek to compel an answer to a question regarding the identities of the members of the plaintiff, a limited liability company.

After review of the transcripts provided to the Court, including additional excerpts that defense counsel provided at the hearing, I agree, for the most part, with defendants' contentions.

First, I find that certain objections made by Dean Dickie, plaintiff's counsel, during the course of depositions, particularly that of Vincent Siano, were suggestive and inappropriate.  These include objections which included comments that questions called for speculation, were vague or were ambiguous.  Examples of such improper objections may be found at Siano Depo. Tr. page 26, lines 5-7; 28, lines 17-18; 32 at lines 5-6; 33 at lines 7-8; 34 at lines 6-7; 35 at 5-6; 38 at 14-15; 45 at 3-4, 17-18; 47 at lines 7, 13-14, 22-23; 48 at 10-19; 51 at 23-24; 54 at 22-23; 65 at lines 16-17; 122 at line 21; 167 at lines 12-15; 169 at 6-7.

Mr. Dickie's conduct was improper because his objections were often not "limited to the statement 'objection as to form,' or other specific evidentiary basis." Ryan v. Paychex, Inc., 2009 WL 2883053 at *2 (D.Conn. Sept. 1, 2009). Moreover, "it is not counsel's place to interrupt if a question is perceived to be potentially unclear to the witness." Phillips v. Manufacturers Hanover Trust Co., 1994 WL 116078 at *3 (S.D.N.Y. Mar. 29, 1994). Rather "[t]he Federal Rules of Civil Procedure provide two mechanisms to correct or clarify deposition testimony, namely cross-examination and through submission to the witness for review." Cameron Indus., v. Mothers Work, Inc., 2007 WL 1649856 at *5 (S.D.N.Y. June 6, 2007).

Notwithstanding the many objections made in an improper fashion, I do not find that the disruption caused by these many improper objections warrant sanctions pursuant to Rule 30(d)(2) or 28 U.S.C. § 1927. Some of the objections were justified and "[t]he extent of counsel's objections is less pervasive than of counsel in other cases where the court imposed sanctions under section 1927." See Order dated Oct. 5, 2011 (ct. doc. 136) at 3-4, Applebaum v. Nat'l Westminster Bank, 07-CV-916 (E.D.N.Y.)[4] and cases discussed therein. Compare Morales v. Zondo, 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (granting sanctions where counsel's "private consultations with the witness, instructions not to answer, instructions how to answer, colloquies, interrupts, and ad hominem attacks disrupted the

---

[4] Since this case does not appear on Westlaw, it is attached to this Minute Order.

examination . . . and protracted the length of the deposition")
and Unique Concepts, Inc. v. Brown, 115 F.R.D. 292, 292-93 (S.D.N.Y.
1987) (granting sanctions where "it is hard to find a page on which
[counsel] does not intrude on the examination with a speech, a
question to the examiner, or an attempt to engage in colloquy
distracting to the examiner" and "constant interruptions . . .
silencing of the witness and obstructive demands for explanations
from the examiner rendered the deposition worthless and an exercise
in futility") with Sicurelli v. Jeneric/Pentron, Inc., 2005 WL 351701
at *7 (E.D.N.Y. Dec. 30, 2005) (declining to impose sanctions where
"counsel's interference . . . did significantly frustrate the
progress of and [examiner]'s ability to complete the depositions" but
"counsel's conduct . . . was not so completely without merit as to
require the conclusion that the conduct was undertaken to harass or
delay or for some improper purpose") and Phillips, 1994 WL 116078 at
*4 (declining to award sanctions where, although "[t]he sheer volume
of unwarranted objections was such that it interfered substantially
with [examiner]'s ability to obtain information from [deponent]" and
counsel's "conduct did indeed verge on frustrating the fair
examination of [deponent]," examining counsel "was not prevented from
completing the deposition").

However, Mr. Dickie and any other attorney for plaintiff who
may conduct a deposition in this matter are warned that they must
refrain, when making an objection, from stating that a question is
vague, ambiguous or calls for speculation.  Counsel should simply

-8-

state, "Objection as to form." Similarly, objections as to foundation should be simply stated as such: "Objection, foundation." There should not be any comment that a question is speculative. Elaboration is permitted only where examining counsel requests the basis of the objection.

Remarkably, this ruling is similar to the ruling made by Magistrate Judge Michael Dolinger in addressing the conduct of Mr. Dickie during depositions in a related litigation in which Mr. Dickie also represented Meyer -- Farberware Licensing Co. v. Meyer Marking Co., 09-CV-2570 (HB)(MHD) (the "Related Litigation"). See id., Conf. Tr. dated July 8, 2009 at 10-11 (attached to ct. doc. 76 as Ex. V). Judge Dolinger chastised Mr. Dickie on the record for making speaking objections and directed that he simply say "Objection as to form." Continued similar behavior in this case will not be tolerated in the future.

Defendants also argue this Court should follow Judge Dolinger's ruling[5] and direct plaintiff to answer the question posed to Dean Krause, Meyer's Senior Vice President and General Counsel, regarding the identities of members of the Meyer International Holdings Limited Board of Directors. See Krause Depo. Tr. at 101-103. Plaintiff objected on grounds of relevance. This Court agrees, since disclosure of the identities of members of a private limited liability corporation will not yield information regarding the persons in the corporation involved in the transactions at issue. In

_____

[5] See Farberware, 09-CV-2570, July 8, 2009 Conf. Tr. at 6-9.

contrast, the corporate relationships among the Meyer entities that Judge Dolinger required to be disclosed in the Related Litigation pertain to basic information regarding the corporate structure of Meyer.

Next, defendants complain that Mr. Dickie repeatedly raised the objection that questions posed to a Rule 30(b)(6) witness depositions were beyond the scope of the deposition notice. I expressly ruled at a conference on March 24, 2012 that defendants would be permitted to question plaintiff's Rule 30(b)(6) witnesses following a dispute that arose over the location of the depositions. See Minute Entry dated 3/24/12. This ruling was intended to facilitate the flow of information and potentially minimize the number of depositions required. A person with knowledge, even if not testifying in a corporate capacity, may provide useful information that is admissible.

As this Court has previously observed, "[w]hen a deponent is produced pursuant to Fed.R.Civ.P. 30(b)(6), the scope of questioning at the deposition is not defined by the notice of deposition – instead, Fed.R.Civ.P. 26(1) defines the scope of discovery unless otherwise ordered by the court." Employers Ins. Co. v. Nationwide Mut. Fire Ins. Co., 2006 WL 1120632 at *1 (E.D.N.Y. Apr. 26, 2006) (citing Charles Alan Wright & Arthur R. Miller, 8A Federal Practice and Procedure § 2103 (2d ed. 1994 & Supp. 2005)). The topics designated in a notice of deposition "cannot be used to limit what is asked of the designated witness, but rather, it constitutes the

minimum, not the maximum, about what a deponent must be prepared to speak."  Id. (internal citations omitted).

Although plaintiff is permitted to object to a question as beyond the scope of the notice in order to preserve for the record that the deponent is answering such a question in an individual, not corporate, capacity, many of Mr. Dickie's objections in this regard were excessively wordy.  See Siano Depo. Tr. 33 at lines 9-17, 22-25; 34 at 1-5, 9-22; 36 at 2-10; 44 at 6-10; 49 at 22-25; 169 at 23-25; 194 at 9-16.  In the future, Mr. Dickie must state his objections to scope simply by stating "Objection, beyond the scope of the deposition notice."

Defendants also contend that Mr. Dickie improperly objected on grounds of attorney-client privilege.  After reviewing the transcript, I find that plaintiff sometimes prematurely raised privilege objections in response to questions that did not clearly call for privileged information, particularly whether certain discussions had taken place.  For example, Mr. Dickie objected prematurely to questions requiring a simple yes or no response at: Siano Depo. Tr. at 121, lines 12-19; Krause Depo. Tr. at 22, lines 17-18 cont'd at 23 lines 7-17; 139 at lines 22-25, cont'd at 140, 141.  Questions to establish whether a discussion took place are permissible.  See Brewer v. Hall, 2005 WL 2219304 at *3, fn. 1 (E.D.N.Y. Sept. 12, 2005) ("To the extent defendants objected to questions concerning whether Staller provided documents to the Village Attorney, these objections are overruled because they do not

-11-

ask for the substances of the attorney-client communication").  To be
sure, although "counsel may inquire whether the witness had spoken
with [opposing counsel] about the action before the deposition, he
cannot obtain the substance of communications." Coleman v. City of
New York, 1999 WL 493388 at *2 (S.D.N.Y. July 8, 1999).  Thus,
questions should not be designed to elicit the contents of a
communication beyond the general question whether a discussion took
place as to a broad subject matter.

Notwithstanding the fact this Court is declining to impose
sanctions, this Court will not permit plaintiff's improper objections
to thwart discovery.  According to defendants' counsel at oral
argument, the excerpts from the depositions that were submitted were
illustrative of the conduct of plaintiff's counsel throughout the
depositions, and not merely the only examples of improper conduct.
In the excerpts reviewed, the deponent often did ultimately answer
the questions.  However, a number of objections that a question was
speculative resulted in the deponent not answering a straightforward
question.  Some examples include the following exchanges:

> Q: Do you remember any of the years between '91 and '96 as to
> whether or not there was growth in revenue?
> Mr. Dickie: Objection, calls for speculation.
> A:  Yes.  I don't know.  No, I don't know.  I can't give a
> specific answer.

Siano Depo. Tr. at 28, lines 13-22.

> Q:  Do you know sitting here today in 1997 how many products
> fell under the Farberware brand approximately? Let me ask you
> this: Is it greater than 25?
> Mr. Dickie:  Objection as to what point in time.
> Q:  1997.

-12-

A:  25 brands.
A:  25 brands, 25 different products?  I am trying to get a
sense of what the product lines you were managing in 1997.
Mr. Dickie:  Objection.  That is a different question. You
asked him for a number.  Now you want to know the product
lines.  That's an entirely different question.  Which do you
prefer an answer to?
Q:  In 1997, how many different Farberware products existed, if
you know?
A:  I can't give you a specific answer.
[brief recess]
Q:  Can you please just read back the last question? [Record
was read].  let me ask you this: Was that number greater than
100?
Mr. Dickie:  Objection, calls for speculation.
[Counsel argue about the scope of the 30(b)(6) deposition).
Q:  Was it greater than 100 products?
Mr. Dickie:  Objection, calls for speculation.  Same objection.
A:  I don't know.

Siano Depo. Tr. at 33-35.

Q:  How long were you using GroupWise?
A:  I don't have a specific answer.
Q:  Approximately?
Mr. Dickie:  Objection, lack of foundation, calls for
speculation. If you know, tell him. But you are--
A:  I don't know the answer to the question.
Q:  Was it more than ten years?
Mr. Dickie:  Objection, calls for speculation.
A:  I don't know.

Siano Depo. Tr. at 47, lines 4-14.

Q:  What was the last time you upgraded your computer?
A:  I don't know the exact date.
Q:  Approximately?
Mr. Dickie:  Objection. Don't guess.
A:  I don't have a guess.  I can't give you a valid answer.
Q:  Was it less than three years ago?
Mr. Dickie:  Objection, calls for speculation.  Anything is
possible.
A:  I don't know.


Siano Depo. Tr. at 51, lines 15-25.

Q: Does Meyer have any policies regarding employee use of
company computer, company uses or devices?

Mr. Dickie:  Object to the form of the question, outside the topic for the 30(b)(6) witness here today, it also calls for him to speculate.
A:  I could just speculate.  There is no formal -- as far as I know personally, there is no formal rule.

Siano Depo. Tr. at 54-55.

While the Court cannot definitively say that the deponent would have given responsive answers in the absence of Mr. Dickie's objections, the record is clear that, following these improper objections by plaintiff's counsel, Mr. Siano failed to give responsive answers to defendants' questions.  Therefore plaintiff is ordered to review the transcripts of the depositions of Mr. Siano and Mr. Krause in order to locate exchanges like those cited above and supra at 6-7, n. 3, where the deponent did not give a substantive answer to a question following an improper speaking objection by Mr. Dickie.  Plaintiff must provide affidavits from the deponents containing specific responses to each question that the witness did not answer and, where the witness denied having knowledge, to obtain and provide all information within the knowledge of the witness or confirm that the witness does not have sufficient knowledge to respond.  Plaintiff need not provide responses relating to premature objections of privilege since it is not apparent that the information would be relevant.  This order is without prejudice to defendants to seek leave for re-examination if the affidavit is not adequate.  See, e.g., Sicurelli, 2005 WL 3591701 at *9 (permitting examining counsel to re-depose witnesses whose depositions were interrupted by counsel's improper objections).

-14-

Finally, the parties are advised that should future disputes regarding deposition conduct arise in the future, they may call chambers during the deposition for a ruling, as permitted by Local Civil Rule 37.3(b).

5.  Litigation Hold

Defendants argue sanctions are warranted because plaintiff did not provide evidence of a written litigation hold notice.  The Second Circuit recently rejected a similar argument that failure to issue a written hold letter is per se gross negligence.  See Chin v. Port Auth. of New York & New Jersey, ---F.3d---, 2012 WL 2760776 at *21 (rejecting "the notion that a failure to institute a litigation hold constitutes gross negligence per se" and affirming that "a case-by-case approach" must be used to determine whether conduct relating to a litigation hold was negligent and requires sanctions).  Furthermore, on the record presented, the Court cannot determine whether and what evidence was lost and how such evidence is relevant to this case.  Therefore the request for sanctions on this ground is denied.

6.  Redaction Log

Earlier in this case, defendants sought to obtain from plaintiff the documents produced in the Related Litigation.  In a previous order I granted defendants' motion to compel these materials, but limited discovery to issues raised in this action and explicitly authorized production of billing records, invoices and trial and deposition testimony.  Order of the Court (ct. doc. 38) at

¶ 4.  Defendants seek to compel production of a redaction log with respect to several pages of documents produced which were almost entirely redacted.  Plaintiff contends that such a log is not available.

Having proceeded along this track of discovery, defendants are hard put to complain that plaintiff produced precisely what was asked of them -- specifically, the documents produced in the Related Litigation.  Defendants offer little information at all about the redacted documents except to explain that they are screenshots taken from a database that purportedly contain the term "tea kettles."  Of course defendants are not in a position to provide other information.  However, they have had the right in this litigation to obtain all relevant discovery and have been free to inquire about any relevant information whether from the prior cases related to this litigation or in the Related litigation.

Nevertheless, only plaintiff has access to information and documents that may shed light on the redacted documents it produced and its counsel may have knowledge of what information they redacted from the documents originally produced in the Related Litigation.  Thus plaintiff must attempt to find the discovery demands to which the documents containing screenshots were produced in response and the redaction logs.  If plaintiff cannot do so, it must attempt to re-create the screenshots to the best of its ability and then determine what redactions were made and whether they would be appropriate.  If they are, an appropriate log must be provided.

## II.  **Defendants' Second Motion to Compel**

Defendants request sanctions pursuant to F.R.C.P. 37(d) in the form of attorneys fees and costs for the deposition of Ms. Christina Ushijima and the costs of making the present motion (ct. doc. 77). They complain that Ms. Ushijima, as a Rule 30(b)(6) witness, lacked sufficient technical knowledge, training, experience or preparation to adequately respond to their questions on the 19 technical topics contained in the notice of deposition.  Ct. doc. 77 at 4.  Defendants claim that Ms. Ushijima was unprepared to discuss a number of topics in a meaningful manner, including: Meyer's information technology (IT) department, Meyer's databases and circulation of information contained in databases to employees, computer security measures, information retention practices and policies, details about software programs and hardware used by Meyer, Meyer's e-mail services, and back-up practices and procedures.

In its opposition, plaintiff responds that Ms. Ushijima had prepared for the deposition as plaintiff's Rule 30(b)(6) designee. It asserts that defendants asked questions in overly general terms and failed to ask specific questions on subjects such as: Ms. Ushijima's deposition preparation, litigation hold practices and policies, computer security measures, accessibility of Meyer systems from outside the office, maintenance and upgrades, archiving, databases, back-up practices and procedures, retention and deletion policies.  Pl's Opp'n to Sanctions (ct. doc. 81) at 2-5.  Plaintiff

also stated that it was necessary for Mr. Dickie to object frequently because defendants asked questions outside the scope of the deposition notice and failed to question her topic-by-topic according to the notice of deposition.  <u>Id.</u> at 5-6.  Plaintiff also suggested in its papers and on the record that Mr. MacMull may have worded his questions vaguely for the express purpose of making this motion.  <u>Id.</u>

After reviewing the transcript both before and also after oral argument, I agree with defendants that Ms. Ushijima was not an adequate Rule 30(b)(6) witness for examination on technical computer subjects.  While it is true that "Rule 30(b)(6) deponents need not have personal knowledge concerning the matters set out in the deposition notice . . . the corporation is obligated to prepare them so that they may give knowledgeable answers."  <u>Spanski Enterps, Inc.</u> <u>v. Telewizja Polska, S.A.</u>, 2009 WL 3270794 at *3 (S.D.N.Y. Oct. 13, 2009).  The witness is an attorney and clearly was unable to testify on the technical topics propounded by the notice of deposition, specifically the intricacies of Meyer's computer systems and information policies.

For example, Ms. Ushijima did not know: "whether or not Meyer has any retention policy in connection with voicemail," Ushijima Depo. Tr. at 38, lines 23-25, about "any e-mail system that was being used prior to GroupWise," <u>id.</u> at 40, lines 7-9, "anything about the hardware [GroupWise], essentially the server, that was the repository for e-mail data," <u>id</u> at 41, lines 18-22, "where Meyer keeps its server that contains current e-mail data," <u>id.</u> at 42, lines 9-12,

"whether or not the HR department, or for that matter another department, keeps a record of the computer hardware that Meyer employees use," id. at 48, lines 8-18, about "any policy that Meyer has with respect to the upgrading of any software," id. at 49, lines 3-5, about "any database systems that Meyer uses to record certain sales data," id. at 58, lines 1-3, "the names of any databases that Meyer uses" or "if Meyer uses any databases at all," id at lines 7-13, about "any database reports that are generated by any Meyer employees" except that financial records are kept and whether "those documents are kept in a database", id. at 58-59, about "any backup protocols Meyer utilizes with respect to preserving its electronic data" or "how, if at all, Meyer stores its backup information," id. at 62-63, about any "retention policy in connection with backup data," id. at 63 at lines 8-12, "how backups are done," id. at lines 13-17, or "anything about network data," id. at 64.

It is well established that production of a "30(b)(6) witness who was neither knowledgeable nor informed of highly relevant information . . . [does] not comply with the Rule." In re A.C.E. Elevator Co., 2009 WL 3255381 at *3 (Bkrtcy. S.D.N.Y. Oct. 7, 2009). Ms. Ushijima was neither knowledgeable nor informed of highly relevant information responsive to the deposition topics. She could not even answer many questions at a basic, foundational level regarding Meyer's databases, back-up and retention policies and practices, network data and how financial information is stored. See supra at 18-19.

At oral argument, plaintiff raised a new contention. Specifically, Mr. Dickie argued that the problem was caused by Mr. MacMull's wording of many of the deposition questions in which Mr. MacMull began with the phrase "Do you know?"  Plaintiff claimed by so phrasing the question, Mr. MacMull was seeking only Ms. Ushijima's personal knowledge and could not be asking for information that she had gathered from discussions with other Meyer personnel in preparation for her deposition.  He further opined that if Mr. MacMull had re-worded his questions to make clear that he was asking about the corporate practices and policies, Ms. Ushijima would have been able to give satisfactory answers to the deposition questions.

Plaintiff's argument regarding the wording of Mr. MacMull's question is nonsensical and groundless.  This Court is aware of no cases where such an argument has been accepted and, to the contrary, questions similar in form to those complained of by plaintiff have been upheld in this Circuit.  See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, 2008 WL 5336700 at *6 (S.D.N.Y. Dec. 22, 2008).[6]  The court in Kingsway also awarded sanctions following a 30(b)(6) deposition where, as here, the witness was unable to answer questions in several relevant topics.  Id., 2008 WL 5336700 at *9.

Rule 37(d) provides for sanctions where a witness fails to appear, and "courts treat the production of an unprepared witness as 'tantamount to a failure to appear.'"  Crawford v. Franklin Credit

_____

[6] Examining counsel asked numerous questions beginning with phrases such as, "Do you know," "do you have any idea" and "do you have any knowledge of . . ."  Id.

Mgmt. Corp., 261 F.R.D. 34, 38-39 (S.D.N.Y. 2009); see also F.R.C.P. 37(d)(1)(A)(I).   However, it is clear that sanctions should be imposed only where "inadequacies in a deponent's testimony [are] egregious and not merely lacking in desired specificity in discrete areas." Crawford, 261 F.R.D. at 39.

I find that plaintiff's designation of Ms. Ushijima, who lacked knowledge about many of the technical topics in the deposition notice described above, is plainly egregious.  Plaintiff suggests that she may have discussed these topics with more knowledgeable persons, but considering the technical nature of these topics, it is unlikely that a person without technical training or experience could provide adequate responses.  That is precisely the problem here.  Moreover, although plaintiff contends that defendants failed to ask about relevant corporate policies, the deposition notice is clear that defendants also sought information regarding corporate practices and factual information that Ms. Ushijima did not possess.

Sanctions are particularly appropriate here because this Court and the parties discussed at length the topics that would be explored at the technical deposition and the perceived gaps in plaintiff's production that in large part necessitated this examination.  See Kingsway, 2008 WL 5336700 at *11 ("bad faith could be inferred from plaintiffs' repeated disregard of my Orders to disclose the basis of their damage calculations" and awarding attorneys fees of deposition and sanctions motion).

Rule 37 states that, where a witness has failed to appear, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure . . ."  F.R.C.P. 37(d)(3). Plaintiff has articulated no satisfactory justification for its designation of an inadequate witness or any other circumstances that would make an award of expenses unjust.  Therefore defendants are entitled to recover fees and costs incurred in connection with preparation of the instant motion and the actual time spent in attending and conducting the deposition of Ms. Ushijima, but not time spent preparing for the deposition.  The sanctions shall be imposed on plaintiff and counsel, who should have been aware of Ms. Ushijima's limitations.

Plaintiff must also produce a new Rule 30(b)(6) witness for a deposition on the technical topics enumerated in defendants' deposition notice.

CONCLUSION

For the foregoing reasons, defendants' motion to compel and for sanctions for plaintiff's failure to produce an adequate 30(b)(6) witness (ct. doc. 77) is granted.  Defendants are entitled to a further deposition of a knowledgeable witness and to costs and attorneys fees spent in preparing their motion and conducting the deposition of Ms. Ushijima.  Defendants must file their application for fees and costs, which must include billing records, by August 27, 2012, and plaintiff is to respond by September 10, 2012.

Defendants' other motion to compel and for sanctions (ct. doc. 76) is granted in part and denied in part.  Defendants' request for further information in response to its Document Request 8 regarding landed costs is denied.  Defendants' request for further information in response to its Document Request 11 regarding notice is granted to the extent that plaintiff must provide any further responsive documents by August 17, 2012 or be precluded from using such at trial.  Mr. Dickie and any other plaintiff's counsel participating in depositions are warned that all objections are to be stated succinctly, objections as to form should not be further explicated unless requested by counsel, and objections as to privilege must be made at appropriate moments.  Defendants' motion for sanctions relating to plaintiff's litigation hold is denied.  Defendants' request to compel unredacted versions of the redacted screenshots is granted to the extent stated above, without prejudice to any future application if and when further information is presented to the Court to establish their relevance.

In conclusion, I remind the parties to focus discovery on issues relevant to their claims and defenses in light of the plaintiff's expressed position that it seeks only disgorgement of defendants' profits.  However, such a narrowing of the scope of discovery should not be viewed as a license to avoid discovery obligations.

The Federal Rules of Civil Procedure are designed to enable the full and focused disclosure of all the facts relevant to a case.  As

the United States Supreme Court noted in <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947):

> [t]he various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus, civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

In addition, Local Civil Rule 26.4 directs that "[c]ounsel are expected to cooperate with each other" and that "[d]iscovery requests shall be read reasonably in the recognition that the attorney serving them generally does not have the information being sought." <u>Id.</u> These standards should be followed in the remaining depositions to be taken. Such a directive should ordinarily not be necessary, but the professionalism and cooperation embodied in Rule 26.4 has all too often not been evident.

**SO ORDERED.**

Dated:     Brooklyn, New York
           August 13, 2012

                                    /s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE